J-S57012-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: S.Y.F., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: E.P., JR., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 974 MDA 2019 |

Appeal from the Decree Entered May 21, 2019
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s): 2078-2018

BEFORE: BOWES, J., STABILE, J., and MUSMANNO, J.

MEMORANDUM BY BOWES, J.: **FILED NOVEMBER 27, 2019**

E.P., Jr. ("Presumptive Father"), appeals from the May 21, 2019, orphans' court decree[1] that involuntarily terminated his parental rights to his daughter, S.Y.F., born in February 2012.[2] In addition, on September 9, 2019,

_____

[1] The decree was dated May 16, 2019; however, the orphans' court did not provide notice pursuant to Pa.R.C.P. 236(b) until May 21, 2019. Our appellate rules designate the date of entry as "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.C.P. 236(b)." Pa.R.A.P. 108(b). Further, our Supreme Court has held that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given." *Frazier v. City of Philadelphia*, 735 A.2d 113, 115 (Pa. 1999).

[2] By the same decree, the orphans' court involuntarily terminated the parental rights of the biological father, A.O. a/k/a A.O.-S. ("Father"), as well as the mother, X.F. ("Mother"). Father did not participate in the orphans' court proceedings nor appeal the decree. We address Mother's appeal in a separate memorandum filed at Superior Court Docket No. 940 MDA 2019.

counsel for Presumptive Father, Caprice Hicks Bunting, Esquire ("Counsel"), filed an **Anders**[3] brief, averring that the within appeal is wholly frivolous, as well as a petition to withdraw. We grant Counsel's petition to withdraw and affirm.

The relevant procedural and factual history are as follows. S.Y.F. has been in the custody of Lancaster County Children and Youth Social Service Agency ("CYS" or the "Agency") since October 19, 2016. N.T., 5/16/19, at 8; N.T., 4/18/19, at 48; Petitioner's Exhibit 2, 5/16/19, at 2 (unpaginated). The circumstances of the agency's involvement were recounted as follows:

> On September 8, 2016, the [CYS] received its most recent referral of the . . . family. It was reported to the Agency that [Mother] and her paramour . . . could be heard fighting loudly throughout the night and the parents were using illegal drugs while in a parenting role. It was also reported that [S.Y.F.] was often seen dirty and uncared for.
>
> . . . .
>
> The child, [S.Y.F.], continued to reside with [Mother] and [her paramour]. There were continued reports received that there [were] domestic disputes in the home between [Mother] and [her paramour] as well as continued drug use. The Agency sent a legal letter notifying the family that if they were not cooperative with allowing the Agency to complete a home visit, . . . the Agency would be reporting [S.Y.F.] as a missing person and the Agency would be consulting the Agency attorney. A home visit was completed on October 17, 2016, with assistance from Lancaster City Police. The family was not present. There were continued concerns regarding the whereabouts of [S.Y.F.], as well as concerns for violence and drug use in the home.

---

[3] **Anders v. California**, 386 U.S. 738 (1967).

> [S.Y.F.] was placed into Agency custody on October 19, 2016, when she was located. [The juvenile court adjudicated S.Y.F. dependent in December 2016.] [S.Y.F.] was placed into Agency custody on October 19, 2016, when she was located.

Petitioner's Exhibit 2, 5/16/19, at 1-3 (unpaginated); **see also** N.T., 5/16/19, at 8.

On September 26, 2018, CYS filed a petition to terminate parental rights of Mother, Father, and Presumptive Father. CYS amended the petition on April 22, 2019 to include 23 Pa.C.S. § 2511(a)(3) as to Presumptive Father. The orphans' court held hearings on the Agency's petition on October 25, 2018,[4] April 18, 2019, and May 16, 2019. As Presumptive Father was incarcerated at SCI-Camp Hill, he participated in the hearing via telephone. CYS presented the testimony of Amanda Kauffman, the CYS caseworker assigned to the family, Ashley Caban, the Supervisor of CYS's Permanency Unit, and Colby Tuell, Lancaster Adult Probation and Parole Services probation officer.[5]

_____

[4] On October 25, 2018, the orphans' court incorporated that juvenile court records into the termination proceedings. N.T., 10/25/18, at 5-7; **see also** Order, 10/26/18. Notably, however, the juvenile court records were not included with the certified record transmitted to this Court. On October 28, 2019, we directed the Clerk of Courts of Lancaster County to certify the juvenile court record and transmit it to the Prothonotary of this Court as a supplemental certified record pursuant to Pa.R.A.P. 1926. *Per Curiam* Order, 10/28/19.

[5] S.Y.F.'s legal interest and her best interests were represented during these proceedings by one of two guardians *ad litem*: Jeffrey Gonick, Esquire, represented the child on October 25, 2018; and Gina M. Carnes, Esquire, represented her on April 18, 2019 and May 16, 2019, respectively. Notably, Attorney Carnes testified that she spoke with then-seven-year-old S.Y.F. and did not discern a conflict between the child's best interests and her legal

By decree dated May 16, 2019, and entered May 21, 2019, the orphans'

court involuntarily terminated the parental rights of Presumptive Father

pursuant to 23 Pa.C.S. § 2511(a)(3), and (b).[6]  Thereafter, on June 17, 2019,

Presumptive Father, through counsel, filed a timely notice of appeal, along

with a concise statement of errors complained of on appeal pursuant to

Pa.R.A.P. 1925(a)(2)(i) and (b).

When counsel files an **Anders** brief, this Court may not review the

merits of the appeal without first addressing counsel's request to withdraw.

**Commonwealth v. Washington**, 63 A.3d 797, 800 (Pa.Super. 2013).  In **In

re V.E. & J.E.**, 611 A.2d 1267 (Pa. Super. 1992), this Court extended the

**Anders** principles to appeals involving the termination of parental rights.  **Id.**

at 1275.  Counsel appointed to represent an indigent parent on appeal from a

decree involuntarily terminating parental rights may therefore petition this

---

interest, *i.e.*, the child's preference to remain with her half-sibling in the pre-
adoptive foster home.  N.T., 5/16/19, at 21-22.  Hence, this case complies
with our Supreme Court's mandate announced in **In re Adoption of L.B.M.**,
161 A.3d 172, 174-75, 180 (Pa. 2017) and **In re T.S.**, 192 A.3d 1080, 1089-
90, 1092-93 (Pa. 2018), that children in contested termination of parental
rights proceedings must be appointed counsel to represent their legal interest.
**See also In re: Adoption of K.M.G.**, ____ A.3d ____, 2019 WL 4392506
(Pa.Super. September 13, 2019) (*en banc*) (holding, while this Court has
authority only to raise *sua sponte* the issue of whether trial court appointed
legal counsel, it lacks authority to delve into quality of counsel's representation
*sua sponte*).

[6] The decree does not identify the specific subsection under which the trial
court terminated Presumptive Father's parental rights.  However, the
language utilized in the decree, as supported by the conclusions set forth in
the orphans' court's opinion, parallels the grounds outlined in 23 Pa.C.S. §
2511(a)(3), and (b).  Trial Court Opinion, 7/31/19, at 38; Decree, 5/21/19.

Court for leave to withdraw representation and submit an **Anders** brief. **In re S.M.B.**, **A.M.B., & G.G.B.**, 856 A.2d 1235, 1237 (Pa.Super. 2004). In **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009), our Supreme Court explained, "the major thrust of **Anders** . . . is to assure that counsel undertakes a careful assessment of any available claim that an indigent appellant might have." **Id**. at 174, 358. The Court stated that this "is achieved by requiring counsel to conduct an exhaustive examination of the record and by also placing the responsibility on the reviewing court to make an independent determination of the merits of the appeal." **Id**.

> To withdraw, counsel must:
>
> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [**Anders**] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*). Counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights." **Millisock**, *supra* at 752.

We further review Counsel's **Anders** brief for compliance with the substantive requirements set forth in **Santiago**, *supra*.

> [W]e hold that in the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that

- 5 -

counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

978 A.2d at 361. "Once counsel has satisfied the above requirements, it is then this Court's duty to conduct its own review of the trial court's proceedings and render an independent judgment as to whether the appeal is, in fact, wholly frivolous." **Commonwealth v. Goodwin**, 928 A.2d 287, 291 (Pa.Super. 2007) (*en banc*) (quoting **Commonwealth v. Wright**, 846 A.2d 730, 736 (Pa.Super. 2004)); **see also See Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa.Super. 2015) (noting independent review of record did to discern additional, non-frivolous issues overlooked by counsel).

Counsel has satisfied the first requirement of **Anders** by filing a petition to withdraw, wherein she asserts that she has made a conscientious review of the record and determined the appeal would be frivolous. Likewise, Counsel has satisfied the second requirement by filing an **Anders** brief that complies with the requirements set forth in **Santiago**, **supra**. With respect to the third requirement, Counsel did not attach to her petition a copy of a letter advising Appellant of his rights pursuant to **Millisock**, **supra**. On September 11, 2019, this Court directed counsel to file a **Millisock** letter within fourteen days with a copy to be provided to Appellant. Counsel complied on September 18, 2019, filing a letter dated September 11, 2019, and also enclosing a previous letter dated September 9, 2019. Certificates of service were attached to the brief,

petition, and *Millisock* letter indicating that Appellant was served a copy of all of the documents. Counsel has also substantially complied with the requirements set forth in *Santiago*, *supra*. Hence, we conclude that Counsel has complied with the procedural *Anders* requirements and proceed to a review of the merits.

Counsel's *Anders* brief raises the following issue for our review:

Whether the trial court erred in terminating parental rights of [P]resumptive [F]ather where there was not clear and convincing evidence to support the Orphan's Court conclusion thereof[?]

*Anders* brief at 12.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id*. "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id*. The trial court's decision, however, should not be reversed merely because the record would support a different result. *Id*. at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, [9 A.3d 1179, 1190 (Pa. 2010)].

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*

*& J.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is governed by § 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under [§] 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [§] 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [§] 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (quoting *Matter of Adoption of Charles E.D.M., II*, 708 A.2d 88, 91 (Pa. 1998)).

In the case *sub judice*, the trial court terminated Presumptive Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(3), and (b). In order to

affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of § 2511(a), as well as § 2511(b).  ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).  Here, we analyze the court's termination pursuant to § 2511(a)(3) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (3) The parent is the presumptive but not the natural father of the child.
>
> . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(3), and (b).

Further, as to § 2511(b), our Supreme Court has stated as follows:

The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." ***In re K.M.***, 53 A.3d 781, 791 (Pa.Super. 2012). In ***In re E.M.***, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child.  The "utmost attention" should be paid to discerning the

> effect on the child of permanently severing the parental bond. ***In re K.M.***, 53 A.3d at 791. However, as discussed below, evaluation of a child's bonds is not always an easy task.

***In re T.S.M.***, ***supra*** 267. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." ***In re K.Z.S.***, 946 A.2d 753, 762-63 (Pa.Super. 2008) (citation omitted).

When evaluating a parental bond, "[T]he court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, § 2511(b) does not require a formal bonding evaluation." ***In re Z.P.***, ***supra*** at 1121 (internal citations omitted).

> Moreover,
>
> While a parent's emotional bond with his or her child is a major aspect of the [§] 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
>> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. . . .

***In re Adoption of C.D.R.***, ***supra*** at 1219 (quoting ***In re N.A.M.***, 33 A.3d 95, 103 (Pa.Super. 2011)) (quotation marks and citations omitted).

As to the statutory grounds for termination pf parental rights under § 2511(a)(3), the orphans' court stated, ". . .[T]he statute makes it eminently clear as to [Presumptive Father]'s status as a presumptive father only, that

status alone, it warrants termination." N.T., 5/16/19, at 22. Further, in finding grounds for termination pursuant to § 2511(a)(3) and that termination was in S.Y.F.'s best interests, the orphans' court reasoned:

One ground was proven as to Presumptive Father, specifically, under 23 [Pa.C.S. § 2511(a)(3)].

. . . .

Presumptive Father is the presumptive but not the natural father of [S.Y.F.]. [Presumptive Father] has never cared for S.Y.F. Nothing more need be shown under 23 [Pa.C.S. § 2511(a)(3)] to warrant the termination of his parental rights.

. . . .

In as much as Presumptive Father has never cared for S.Y.F. and has, at best, a negligible relationship with her, there is no doubt that . . . S.Y.F.'s best interest will be served by maintaining no contact with Presumptive Father and terminating his presumptive parental rights.

Trial Court Opinion, 7/31/19, at 40-43.

A review of the certified record supports the orphans' court's finding of grounds for termination under § 2511(a)(3). Presumptive Father is not S.Y.F.'s biological father, but was married to Mother at the time of S.Y.F.'s conception and birth. N.T., 5/16/19, at 13-14, 16; N.T., 4/18/19, at 6-7, 27, 39, 44-45, 57; *see also* Petitioner's Exhibit 2, 5/16/19, at 5. Presumptive Father testified that he was incarcerated at the time of S.Y.F.'s birth and that Mother was having an affair.[7] N.T., 4/18/19, at 57. Although separated, he

_____

[7] In early 2018, CYS discovered that Mother was married to Presumptive Father. *Id.* at 38-39, 44-45.

- 11 -

remained married to Mother at the time of the hearing. *Id.* at 6-7. He has no meaningful relationship with the child.

The Comment to § 2511 notes that subsection (a)(3) was added "to allow the court to prevent injustice where a legal father unreasonably withholds consent to an adoption." 23 Pa.C.S. § 2511(a)(3), 1970 Comment. As we highlight *infra*, Presumptive Father's parental relationship with S.Y.F. is almost nonexistent, and his status as a presumptive father should not preclude the child from attaining finality through the anticipated adoption by her pre-adoptive foster parent. Presumptive Father maintained an ephemeral association with the child at best, and has not contacted her in three years. As this case presents the precise situation the legislature envisioned in fashioning the statutory grounds to terminate parental rights simply upon a showing of clear and convincing evidence that a man is "the presumptive but not the natural father of the child," the orphans' court did not err in applying the provision to terminate parental rights. *See* 23 Pa.C.S. § 2511(a)(3).

As to subsection (b), the record supports the trial court's finding that S.Y.F.'s developmental, physical and emotional needs and welfare favor termination of Presumptive Father's parental rights pursuant to § 2511(b). *See T.S.M.*, 71 A.3d at 267. Critically, Presumptive Father did not come into S.Y.F.'s life until she was two or three years old and, despite referring to himself as her "stepdad," described himself as "just somebody coming in and out of her life." N.T., 4/18/19, at 6-8. He has not seen S.Y.F. in at least two

years and made no request for visitation.  *Id.* at 23.  Further, no cards, letters, or gifts were forwarded on his behalf.  *Id.* at 23-24, 38.

Moreover, S.Y.F. has been placed in her current foster home with her younger half-sister, with whom she is very bonded, since July 2018.  N.T., 5/16/19, at 14, 18; N.T., 4/18/19, at 16-17.  The CYS caseworker, Amanda Kauffman, testified that S.Y.F. is doing well and is comfortable in the home, which is a pre-adoptive resource.  *Id.* at 16; 17.  Ms. Kauffman reported that S.Y.F. calls the foster parent "mom."  N.T., 5/16/19, at 15.  Further, S.Y.F. has some trauma-related memory loss issues for which she has undergone evaluation and been recommended to undergo further evaluation and therapy.  N.T., 5/16/19, at 14-15; N.T., 4/18/19, at 16, 42-43.  Ms. Kauffman testified that S.Y.F.'s foster parent is able to meet these needs.  N.T., 5/16/19, at 15.  As such, Ms. Kauffman opined that it is in S.Y.F.'s best interest to remain in the current foster home.  *Id.* at 16.

While Presumptive Father may profess to love S.Y.F., a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights.  *In re Z.P.*, 994 A.2d at 1121.  At the time the termination hearings concluded, S.Y.F. had been in placement for approximately two and half years, and is entitled to permanency and stability.  As we stated, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting."  *Id.* at 1125.  Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's

right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." ***In re B., N.M.***, 856 A.2d 847, 856 (Pa.Super. 2004) (citation omitted). As such, the orphans' court did not abuse its discretion in determining that terminating Presumptive Father's parental rights pursuant to § 2511(a) (3) and (b).

Further, we have conducted a "full examination of the proceedings" and have determined that "the appeal is in fact wholly frivolous" ***Flowers***, ***supra*** at 1248. Since our review did not disclose any other arguably meritorious claims, we grant counsel's petition to withdraw and affirm the orphans' court decree terminating Presumptive Father's parental rights.

Petition of Caprice Hicks Bunting, Esquire, to withdraw as counsel is granted. Decree affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/27/2019</u>